## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

LANCE MURRAY,                          )
                                       )
     Petitioner,         )
                                       )
    v.                   )   No. 4:17 CV 2425 DDN
                                       )
TROY STEELE,                           )
                                       )
     Respondent.         )

### MEMORANDUM

 This matter is before the Court upon the petition of Missouri state prisoner Lance Murray for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c).  For the reasons set forth below, the petition for a writ of habeas corpus is denied.

### BACKGROUND

 On October 23, 2013, in the Circuit Court of the City of St. Louis, a jury found petitioner guilty of robbery in the first degree, armed criminal action, and tampering with a motor vehicle in the first degree.  On December 13, 2013, the court sentenced petitioner to a total of 20 years confinement in the Missouri Department of Corrections.

 Petitioner directly appealed and the Missouri Court of Appeals affirmed the circuit court's judgment.  *State v. Murray*, 469 S.W.3d 921 (Mo. Ct. App. 2015).  Petitioner then filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  The circuit court denied the motion without a hearing and the Court of Appeals affirmed.  *Murray v. State*, 511 S.W.3d 442 (Mo. Ct. App. 2017).

 The Missouri Court of Appeals, in its opinion affirming the denial of post-conviction relief, set out the facts indicated by the trial court record thus:

### BACKGROUND

 On December 15, 2012 at approximately 2:00 p.m., a male suspect entered the White Castle located on Herbert Avenue in the City of St. Louis. The male suspect jumped over the counter and pointed his gun at a White Castle employee. He demanded money from the cash register, and the White Castle employee

complied. The suspect fled the scene in a purple van. The entire robbery—which lasted just a few minutes—was recorded by the White Castle's surveillance system.

The police were summoned to the scene of the crime and conducted an investigation. Detective Thomas Meyer ("Detective Meyer") reviewed the surveillance footage and discovered the suspect was wearing dark clothing, distinctive shoes, and a bandana covered his face below the eyes. Detective Meyer also interviewed several of the White Castle employees who were present during the robbery. Victoria Tanksley ("Tanksley"), a White Castle employee, witnessed the robbery from a just a few feet away and saw the suspect's eyes and forehead.

That same afternoon, shortly after the robbery and in a nearby neighborhood, Ashley Burnett ("Burnett") saw a man park a purple van in the middle of her street and get into a gray, four-door car. Upon witnessing this unusual behavior, Burnett called the police. Burnett informed the police that she recognized the man as someone who worked at a nearby business.

Detective Meyer proceeded to Burnett's street and upon arrival found the gray, four-door car matching Burnett's description. As Detective Meyer approached the vehicle, the male suspect exited. Detective Meyer recognized the suspect was wearing the same distinctive shoes as appeared on the White Castle surveillance footage. Detective Meyer arrested the suspect—Movant—for the robbery of the White Castle, and found $102 in Movant's pocket.

Upon arriving at the police station, Detective Meyer informed Movant that there was surveillance footage depicting his face, and that he was preparing a photographic line-up to show to witnesses. Movant immediately retorted: "This is bullsh*t. I want to go to court tonight. They couldn't see my face. I had it covered."

Detective Meyer prepared a six-person photographic lineup to show both Burnett and Tanksley. The photographic lineup was comprised of Movant's photograph and photographs of people with similar characteristics. Before presenting the photographic lineup individually to Burnett and Tanksley, Detective Meyer informed both witnesses that the suspect may or may not be in the lineup, and that they were not obligated to pick anyone. Tanksley identified Movant as the man who had robbed the White Castle both in the photographic lineup and in court, stating that she recognized him because of his distinctive forehead. Similarly, Burnett identified Movant in the photographic lineup and in court as the man whom she saw park and exit the purple van and then enter the gray, four-door car on her street.

At trial, Detective Meyer testified that he believed Movant was the robber at the time he presented said lineups, and that it was possible he could have subconsciously given some signal to either witness to choose Movant's

photograph. However, Detective Meyer also testified that he did not provide any explicit indication to Burnett or Tanksley who they should choose from the photographic lineup.

511 S.W.3d *at* 444-45.

## PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

In his federal habeas petition, petitioner alleges the following grounds for relief:

(1)     The trial court erred by accepting petitioner's waiver of counsel and allowing him to proceed pro se (Doc. 1 at 5).

(2)     Petitioner's direct appeal counsel rendered constitutionally ineffective assistance by failing to challenge the in-court and out-of-court identifications made by two witnesses for the State at trial. (*Id.* at 6.)

(3)     The trial court erred by appointing petitioner's court-appointed public defender as standby counsel after the court gave petitioner leave to represent himself.  (*Id.* at 8).

(4)     The trial court erred by prohibiting petitioner from exercising his right to free speech during the presentation of his case and by prohibiting petitioner's standby counsel from speaking on behalf of petitioner.  (*Id.* at 10.)

(5)     The trial court erred in failing to advise petitioner to move for an acquittal at the close of the State's evidence and at the close of all the evidence.  (Doc. 13 at 21.)

(6)     The trial court erred in failing to generally advise petitioner about *Batson* issues. *Batson v. Kentucky*, 476 U.S. 79 (1986).  (*Id.*)

## EXHAUSTION AND PROCEDURAL BAR

State prisoners are required to exhaust their state law remedies before seeking relief under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A).  If a prisoner "has the right under the law of the State to raise, by any available procedure, the question presented," he has not exhausted his state law remedies. 28 U.S.C. § 2254(c).   In Missouri, an appeal to the intermediate state appellate court sufficiently exhausts state remedies for those grounds to permit federal habeas review of those grounds. *See* Mo. Sup. Ct. R. 83.04; *Randolph v. Kemma*, 276 F.3d 401, 404 (8th Cir. 2002).

It is not sufficient for a petitioner to simply have no remaining procedure for bringing a ground to the state court.  *Humphrey v. Cady*, 405 U.S. 504, 516 (1972); *Anderson v. Harless*,

459 U.S. 4, 6 (1982).  A petitioner must also have fairly presented the substance of each federal ground to the state trial and appellate courts. *Anderson v. Harless*, 459 U.S. at 6.  If a petitioner has not fairly presented the claim and has no remaining state procedure available for doing so, any such ground for federal habeas relief generally is barred from being considered by the federal courts.  *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011); *King v. Kemma*, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).  This doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack.  *See Murray v. Carrier*, 477 U.S. 478, 490-92 (1986).

A petitioner may overcome the procedural bar only by demonstrating either (1) that there is a legally sufficient cause for the default and actual prejudice resulting from it, or (2) that the failure to review the ground would result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state procedural requirements.  *Id.* at 750-53.  Petitioner may, for example, satisfy the cause requirement by showing that attorney error or oversight rose to the level of ineffective assistance of counsel in violation of the Sixth Amendment. *Carrier*, 477 U.S. at 488-89. However, this avenue is precluded, and a procedural default will not be excused when petitioner fails to raise the asserted ineffective assistance claim in his first post-conviction proceeding. *Bailey v. Mapes*, 358 F.3d 1002, 1004 (8th Cir. 2004).

In his direct appeal from his conviction and sentences, petitioner failed to raise his federal habeas grounds 3, 4, 5, and 6.  The failure to bring these claims on appeal constitutes a default that gives rise to an adequate and independent state procedural bar to review.  *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997). Therefore, for a federal court review to proceed, petitioner must show good cause and actual prejudice under *Murray v. Carrier*, 477 U.S. 478 (1986). Petitioner has failed to do so here.  Petitioner has also failed to show that this Court's failure to consider the defaulted grounds would result in a miscarriage of justice.  Such a miscarriage of justice would exist if petitioner presented new evidence of actual innocence showing "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013).  Here, petitioner has not presented evidence of actual innocence or demonstrated that a jury would have been unreasonable in finding him guilty. Accordingly, petitioner's federal habeas grounds 3, 4, 5, and 6 are procedurally barred and will

4

not be considered on their merits in this proceeding.  The Court will proceed on federal habeas grounds 1 and 2.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act provides that federal habeas relief may not be granted unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or … decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes*, 130 S. Ct. 1171, 1174 (2010).  This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Callen v. Pinholster*, 563 U.S. 170, 182-83 (2011).  Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner must rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### A. Ground 1

Petitioner alleges in Ground 1 that the trial court abused its discretion by accepting his waiver of counsel and allowing him to proceed *pro se*.  In support of this allegation, petitioner argues that he was not competent to proceed *pro se*, that when he waived counsel he was under mental duress due to his relationship with his appointed counsel, and that he had no knowledge or understanding of trial procedures.  (Doc. 1 at 7.)  Petitioner also argues that the trial court erred in not adequately advising him of possible defenses and not reinstating his counsel after he

"demonstrated misunderstandings about the conduct of a trial." (*Id.* at 16.)   This Court disagrees.

The standard for waiving the right to counsel under the Sixth Amendment is that the waiver is voluntary, intelligent, and knowing. *United States v. Keiser*, 578 F.3d 897, 902 (8th Cir. 2009).   This standard is met "if the trial court specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages. An on-the-record colloquy exploring the dangers of self-representation is recognized as the preferred method of substantiating a waiver's reliability." *Id.*; *Faretta v. California*, 422 U.S. 806, 807, 835 (1975).

Here, the trial court examined petitioner under oath.   During this examination, the trial court strongly advised petitioner against proceeding *pro se*.   (Doc. 1, Ex. 10 at 3.)   The trial court informed petitioner that if he proceeded *pro se*, he would not receive assistance besides being able to watch the White Castle surveillance video.   (*Id.* at 2.)   This included a warning about the importance of having jury instructions, that the rules of procedure and evidence applied to petitioner, such as making proper objections and that certain issues would be lost if not raised, and that petitioner would not receive help from the court or the prosecutor. (*Id.* at 3-4.) Petitioner confirmed that he understood the dangers and still wanted to represent himself. (*Id.* at 4-5.)   Additionally, the trial court inquired about petitioner's mental health, reviewed the range of punishment for the charged crimes, confirmed that petitioner was literate and had a twelfth-grade education, and on numerous occasions, asked petitioner if he still wanted to represent himself.   (Doc. 1, Ex. 10 at 4; Doc. 13 at 5, 10.)

The trial court's on-the-record colloquy was thorough, explored the dangers of self-representation, and demonstrated that petitioner was familiar with the trial process and did not suffer from duress or a mental incapacity.   Thus, petitioner's waiver of his right to counsel was voluntary, intelligent, and knowing.   The trial court did not have the discretion to override this waiver. *State v. Black*, 223 S.W.3d 149, 154 (Mo. 2007) ("A trial court has no discretion to force an attorney upon a defendant who validly waives his right to counsel.")   Nor did that court have a duty to advise petitioner of specific legal defenses. (*See Id*.)   Further, "[t]echnical legal knowledge" is not relevant to the determination as to whether petitioner's exercise of his right to defend himself was made knowingly. *Faretta*, 422 U.S. at 836.   Petitioner's arguments in

Ground 1 are without merit.  Accordingly, the trial court did not err in accepting petitioner's waiver of counsel and allowing petitioner to proceed *pro se*.

## B. Ground 2

Petitioner argues in ground 2 that the post-conviction motion court erred by denying his claim that his direct appeal counsel rendered constitutionally ineffective assistance for failing to challenge the admissibility of two eyewitnesses at trial without conducting an evidentiary hearing. (Doc. 1, Ex. 2 at 1.)  This Court must give deference to the state court's decision unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law" or rests on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Petitioner's ground 2 is without merit.

There is overwhelming evidence of petitioner's guilt.  He was identified by three eyewitnesses and made self-incriminating statements to the police.  Petitioner was not prejudiced from the failure of the post-conviction motion court not holding an evidentiary hearing. Accordingly, deference should be given to the Missouri Court of Appeal's decision under 28 U.S.C. § 2254(d).

As to the ineffective assistance of counsel claim, petitioner argues that the identification procedures were unduly suggestive, and his appellate counsel was obliged to raise this claim before the Missouri Court of Appeals because it would have required reversal. (Doc. 1, Ex. 2 at 1.)  This Court disagrees.

The Supreme Court has determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon his showing that his "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness.  *Id.* at 687-88.  There is a strong presumption that counsel has rendered constitutionally effective assistance.  *Id.* at 690; *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987).  A petitioner must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  Counsel has "wide latitude … in making tactical decisions;" thus, "[j]udicial

7

scrutiny of counsel's performance must be highly deferential." *Id.* Counsel's strategic choices made after thorough investigation are virtually unchallengeable. *Id*. at 690-91. Further, counsel's decisions following reasonable, but less thorough investigation, are to be upheld to the extent that they are supported by reasonable judgment. *Id.* A reviewing court must acknowledge that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689-90; *Boss v. Ludwick*, 760 F.3d 805, 811 (8th Cir. 2014). Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id.* at 687. A reviewing court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

Petitioner has not met his burden. Appellate counsel does not have a duty to raise every possible issue asserted in the motion for a new trial on appeal. *Mallet v. State*, 769 S.W.2d 77, 84-85 (Mo. banc 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. at 751-52. Petitioner's appellate counsel's decision to challenge only the trial court's decision to allow petitioner to proceed *pro se* is entitled to the presumption of effective assistance.

Further, appellate counsel's decision not to challenge the admissibility of eyewitness identifications does not fall below an objective standard of reasonableness. The record does not demonstrate that the police procedures used in conducting the photo arrays were unduly suggestive. *See State v. Harris*, 483 S.W.3d 488, 492-493 (Mo. App. E.D. 2016) ("as long as no one individual clearly stands out in the lineup, the law does not require exact conformity of physical characteristics."). The photographic lineup consisted of petitioner's photograph and those of five other males with similar features, skin color, and hairstyles as petitioner. (Doc. 1, Ex. 8 at 3.) Before the two witnesses made their identifications, Detective Meyer informed both witnesses that petitioner may or may not be in the lineup and they were not obligated to select anyone. (Doc. 1, Ex. 9 at 4.) Detective Meyer also testified that he did not explicitly indicate to either of the witnesses whom they should select in the photographic lineup. (*Id.* at 5.)

Additionally, the eyewitness identifications were independently reliable. The White Castle employee identified petitioner by his "distinctive forehead," which was not covered during the robbery. (*Id.* at 4.) Meanwhile, upon observing petitioner exit the stolen van, the

neighbor recognized petitioner as someone who worked at a local store. (*Id.*)  Thus, regardless of whether the pretrial procedures were unduly suggestive, there is not a substantial likelihood that the pretrial identifications were unreliable. *See State v. Chambers*, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007) (holding that identifications of defendant were not tainted when witnesses had adequate bases for the identifications independent of the allegedly suggestive procedures).

Even if the decision not to challenge the witness identifications fell below an objective standard of reasonableness, petitioner has not demonstrated actual prejudice by appellate counsel's allegedly deficient performance.  After Detective Meyer informed petitioner that there was a surveillance video showing petitioner's face, petitioner stated: "This is bullshit.  I want to go to court tonight.  They couldn't see my face.  I had it covered." (Doc. 13 at 16.)  This self-incriminating evidence, in addition to other corroborating circumstantial evidence, including that Detective Meyer recognized petitioner was wearing the same distinctive shoes the suspect wore in the surveillance footage, strongly supports the finding of guilt.  Thus, petitioner has not met his burden of showing that the decision reached would, with reasonable likelihood, have been different absent the alleged errors.

Because petitioner has not demonstrated actual prejudice or that appellate counsel's performance fell below an objective standard of reasonableness, petitioner's ground 2 is without merit.

## CONCLUSION

For the reasons set forth above, the petition of Lance Murray for a writ of habeas corpus is denied.  Petitioner made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).   An appropriate Judgment Order is issued herewith.


_____/s/  David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


Signed on July 22, 2020.